JS - 6

# UNITED  STATES  DISTRICT  COURT

# FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| **PREMIER NUTRITION, INC.,** ) | **CASE NO. SACV 06-0827 AG (RNBx)** |
| **Plaintiff,** ) | |
| **v.** ) | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| **ORGANIC FOOD BAR, INC.,** ) | |
| **Defendants.** ) | |
| _____ ) | |
| **ORGANIC FOOD BAR, INC.,** ) | |
| **Counterclaimant,** ) | |
| **v.** ) | |
| **PREMIER NUTRITION, INC.,** ) | |
| **Counterclaim-Defendant.** ) | |
| _____ ) | |

Before the Court is "Plaintiff and Counterclaim-Defendant Premier Nutrition, Inc.'s Motion for Summary Judgment" ("Motion"). This case turns on whether the phrase "organic food bar" is generic. Abundant evidence presented in this case establishes that it is generic. Thus, after considering the moving, opposing, and reply papers, and oral argument by the parties, the Court GRANTS the Motion.

## BACKGROUND

This case involves the claim of Defendant and Counterclaimant Organic Food Bar, Inc. ("Defendant") that Plaintiff and Counterclaim-Defendant Premier Nutrition, Inc. ("Plaintiff") has infringed Defendant's alleged trademark in the term "organic food bar."

Since 2001, Defendant has used the "Organic Food Bar" mark in connection with nutrition products. (Defendant and Counterclaimant Organic Food Bar, Inc.'s Opposition to Premier Nutrition, Inc.'s Motion for Summary Judgment ("Opposition") 2:24-26.) Defendant asserts that its "Organic Food Bar" products are one of the nation's best selling brands of organic nutrition products with annual sales of over $12,000,000 and distribution through retail food stores across the United States. (*Id.* at 3:8-10.) Defendant claims that it supports and drives these sales by spending roughly $2,000,000 a year advertising and promoting its "Organic Food Bar" products. (*Id.* at 3:12-14.)

Since April 2006, Plaintiff has been marketing and selling a food bar that contains organic, raw ingredients. (Complaint ¶ 30.) The packaging of Plaintiff's subject product displays the term "Organic Raw Food Bar." (Declaration of Kamran Fattahi in Support of Premier Nutrition, Inc.'s Motion for Summary Judgment ("Fattahi Declaration"), Exhibit 1.)

In July 2006, Defendant sent a letter to Plaintiff alleging that Defendant had protectable trademark rights in the term "organic food bar" and accusing Premier of violating those rights with its "Organic Raw Food Bar" product. (*Id.* at Exhibit 23.) Plaintiff filed this lawsuit in September 1, 2006 seeking declaratory judgment concerning Defendant's accusations. (Motion

2:27-28.)  With this Motion, Plaintiff asks the Court to find the term "organic food bar" to be a generic term, unprotectable by trademark law.  Alternatively, Plaintiff asks the Court to find "organic food bar" to be merely descriptive and lacking in secondary meaning to consumers.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*. at 248.  In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id*. at 255.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Only if the moving party meets its burden, the non-moving party must produce competent evidence to rebut the moving party's claim and create a genuine issue of material fact.  *See id.* at 322-23.  If the non-moving party meets this burden, then the motion will be denied.  *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

In deciding whether summary judgment is warranted, a court must "view the evidence presented through the prism of the substantive evidentiary burden" that would inhere at trial. *Liberty Lobby, Inc.*, 477 U.S. at 245.  In trademark cases, if a mark is not federally registered, "the plaintiff has the burden of proving nongenericness once the defendant asserts genericness as a defense."  *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999).  This summary judgment motion must be considered in light of Defendant's burden to prove nongenericness.


**ANALYSIS**


### 1.    OBJECTION TO THIS MOTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(f)


Preliminarily, Defendant objects to summary judgment at this stage under Federal Rule of Civil Procedure 56(f) ("Rule 56(f)").  Under Rule 56(f), a court may continue a motion for summary judgment if it appears that a party is unable to properly oppose the motion because of a lack of evidence.  Defendant argues that it has not gathered enough evidence to oppose the Motion adequately.  Defendant emphasizes the fact that the Court continued Plaintiff's previous motion for summary judgment based on Defendant's arguments under Rule 56(f).

The purpose of Rule 56(f) is to prevent a party from being "railroaded" by a premature motion for summary judgment.  *See Rogers v. Home Shopping Network, Inc.*, 57 F.Supp.2d 973, 981 (C.D. Cal. 1999).  Under Rule 56(f), "[t]he burden is on the party seeking additional

discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Conkle v. Jeong*, 73 F.3d 909, 914 (9th Cir. 1995).

Previously, this Court found appropriate a continuance under Rule 56(f).  (Order Granting Defendant's Motion for Additional Discovery Under Rule 56(f) and Continuing Plaintiff Premier Nutrition, Inc.'s Motion for Summary Judgment ("Order").)  At the time, ten months remained before the close of discovery, and Defendant argued that it had not had time to gather the evidence it required.  For example, Defendant asserted that it wanted additional time to hire an expert to conduct surveys about the meaning the term "organic food bar" had acquired in the eyes of the public.  (*Id.* at 2.)

With ten months of discovery remaining, the Court understood that Defendant felt "railroaded" by a summary judgment motion.  But the Court is no longer sympathetic.  This is especially true since the Court had received no indication that Defendant was proceeding with important discovery like the hiring of an expert until October 12, 2007.

Additionally, the further evidence that Defendant currently seeks concerns only one of its defenses to this Motion.  In defense to this Motion, Defendant argues both that "organic food bar" is a descriptive term, not a generic term, and that if it is a descriptive term, it has acquired a secondary meaning that warrants trademark protection.  The evidence Defendant seeks concerns only the argument that "organic food bar" has acquired secondary meaning.  For example, Defendant contends that it wants to take the depositions of some of Plaintiff's founders to ask about its "pattern and practice of capitalizing on its competitors' goodwill," and complains that

Plaintiff has not produced documents regarding Plaintiff's "intent to use its confusingly similar name."   (Opposition 7:18-20.)

The discovery Defendant seeks is not relevant to a determination of genericness.  The Court has already deferred Plaintiff's Motion for Summary Judgment for a sufficient time period.  Thus, at this time it is appropriate to rule on the question of whether the term "organic food bar" is generic.

## 2.    TRADEMARK OVERVIEW

The existence and extent of trademark protection for a particular term depends on that term's inherent distinctiveness.  Courts have identified four general categories of terms: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful.  *Surgicenters of America, Inc. v. Medical Dental Surgeries Co.*, 601 F.2d 1011, 1014 (9th Cir. 1979).  Only the first two terms are in issue here.  Plaintiff asserts that "organic food bar" is a generic term, while Defendant asserts that it is a descriptive term.

A generic term is one that refers "to the genus of which the particular product or service is a species."  *Filipino Yellow Pages, Inc.*, 198 F.3d at 1147.  In other words, generic terms are "common descriptive names" for what the product is.  *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 718 F.2d 327, 329 (9th Cir. 1983), *rev'd on other grounds*, 469 U.S. 189, (1985) (contrasting generic, or "common descriptive" terms with descriptive, or "merely descriptive" terms).  If a term is generic, "it cannot be the subject of trademark protection under any

circumstances, even with a showing of secondary meaning." *Filipino Yellow Pages*, 198 F.3d at 1146.

A descriptive term, on the other hand, describes a "particular quality, function, or characteristic of a product or service." *Suh v. Yang*, 987 F.Supp. 783, 789 (N.D. Cal. 1997). A descriptive term "supplies the characteristics and qualities of the article, its color, order, functions, dimensions, and ingredients." 3 R. Callman, The Law of Unfair Competition and Trademarks, § 70.4, at 1057 (2d ed. 1950). Descriptive terms, unlike generic terms, can be subject to trademark protection, but only under appropriate circumstances. If a descriptive term acquires a "secondary meaning" in the minds of consumers, and thus becomes distinctive of a particular merchant's goods, it can be protected. *Filipino Yellow Pages*, 198 F.3d at 1147.

In determining whether a term is generic, courts often rely on the "who-are-you/what-are-you" test set forth in *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993). Under that test, a protectable mark "answers the buyer's questions 'Who are you' 'Where do you come from?' 'Who vouches for you?'" *Id.* (quoted in *Filipino Yellow Pages*, 198 F.3d at 1147). But the generic name of the product answers the question "What are you?" *Id.* Thus, if the primary significance of a term is to describe "the type of product rather than the producer," it is a generic term. *Anti-Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296, 304 (9th Cir. 1979).

The ultimate test of whether a term is generic is how it is understood by the consuming public. *Surgicenters of America, Inc. v. Medical Dental Surgicenters*, 601 F.2d 1011, 1015 n.11 (9th Cir. 1999). In making that determination for a summary judgment motion, courts rely on a

variety of evidence.  Some factors include: (1) common meanings and dictionary definitions of the words in the term; (2)  use of the term by the one opposing genericness; (3) evidence of how the public uses the term; (4) existence of other companies marketing a similar product under the same term; (5) the Patent and Trade Office's ("PTO") consideration of the term; and (6) consumer surveys.  *See, e.g.*, *Official Airline Guides*, 6 F.3d at 1017; *Filipino Yellow Pages*, 198 F.3d at 1150-51.  Plaintiff has introduced evidence in each of these categories establishing that "organic food bar" is a generic term.

**3.      PLAINTIFF'S EVIDENCE THAT "ORGANIC FOOD BAR" IS A GENERIC TERM**

**3.1      Common Meaning and Dictionary Definition of "Organic Food Bar"**

An analysis of whether a term is generic must start with the term itself.  The term that Defendants seek to protect is "organic food bar."  "While not determinative, dictionary definitions are relevant and often persuasive in determining how a term is understood by the consuming public."  *Surgicenters*, 601 F.2d at 1015 n.11.  As noted in the October 18, 2006 office action by the PTO Trademark Examining Attorney who examined Defendant's application for "organic food bar," "organic" means "[r]aised or conducted without the use of drugs, hormones, or synthetic chemicals," and "food" means "[m]aterial, usually of plant or animal origin, that contains or consists of essential body nutrients . . . and is ingested and assimilated by an organism to produce energy, stimulate growth, and maintain life."  (Fattahi Declaration,

Exhibit 16 (citing <u>The American Heritage Dictionary of the English Language</u>, Fourth Edition, 2000).)  Additionally, the Examiner noted, "bar" means "a solid piece or block of material that is longer than it is wide."  (Fattahi Declaration, Exhibit 16 (citing <u>The Merriam-Webster Online Dictionary</u>, 2006).)

It is clear that the three words of "organic food bar" all have very common meanings.  Each term, on its own, is a generic term.  Indeed, Defendant cannot very well dispute that the two words "food bar," used together, are a generic term, because Defendant consistently uses the term in its marketing materials in a generic sense.  (Declaration of Monique M. Heyninck in Support of Defendant and Counterclaimant Organic Food Bar, Inc.'s Opposition to Premier Nutrition, Inc.'s Motion for Summary Judgment ("Heyninck Declaration"), Exhibit 2.)  Additionally, Defendant does not dispute that "organic" is a common term used in describing food.

The issue then becomes whether combining the generic terms "organic" and "food bar" to form a composite term "organic food bar" creates a generic or descriptive term.  *See Filipino Yellow Pages*, 198 F.3d at 1148.  It is important to look at the term as a whole, and not merely at its component parts.  *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir. 1985).  The dictionary definitions and generic nature of single words in a term are entitled "significant but not controlling weight."  *Filipino Yellow Pages*, 198 F.3d 1143.

At first glance, the composite term certainly seems generic.  Defendant, in marketing bars made of food that are organic, does not use the words in a way different from their common meanings.  It seems that Defendant is describing exactly the type of product it sells.  Thus,

"organic food bar" does not indicate the ingredients or function of the snack, but only that it is an organic food bar.  The term "organic food bar" answers the question "What are you?"  It does not answer the questions "Where do you come from?" or "Who are you?"

### 3.2    Use of the Term by the One Opposing Genericness

The use of a term by the one seeking trademark protection is highly instructive of how the relevant public thinks of the term.  For instance, in *Filipino Yellow Pages*, 198 F.3d 1143, 1150-51, the Ninth Circuit considered it important evidence that the man seeking protection of the term "Filipino Yellow Pages" had used that very term in a generic sense in a contract he signed.

Defendant here has used the term "organic food bar" in a generic sense.  For instance, in its Response to the PTO's refusal to register "Organic Food Bar" on October 18, 2006, Defendant amended its identification of goods to "namely, fruit-based organic food bars, also containing organic dates, organic raisins, organic honey, and organic agave nectar."  (Fattahi Declaration, Exhibit 16.)  The PTO accepted the amendment, and the description of Organic Food Bar, Inc.'s product on the PTO website now states, "fruit-based organic food bars."  (*Id.*)  Thus, Defendant used the term "organic food bars" to describe a class of snacks.  This is a generic use of the term.

Defendant objects to Plaintiff's use of Exhibit 16 in the Fattahi Declaration as evidence.  The Fattahi Declaration states that Exhibit 16 consists of "true copies of the PTO's records relating to [Defendant's] current federal trademark Application Serial No. 78/875,125 for the

term 'Organic Food Bar.'" (Fattahi Declaration ¶ 21.)  Defendant objects that this exhibit lacks foundation and violates the best evidence rule because the copies of the records from the PTO are not certified.  Defendant is wrong.  Under Federal Rule of Evidence 901, evidence that a public record or report is from the public office where items of that nature are kept satisfies the authentication requirement.  Fattahi states that the exhibit items are "true copies of the PTO's records."  Additionally, the papers appear to be printouts from the PTO website.  The printout of the "Organic Food Bar" main page bears the PTO seal and displays the website address and the date on which it was printed.  *See Perfect 10 v. Cybernet Ventures, Inc.*, 213 F.Supp.2d 1146, 1154 (C.D. Cal. 2002) (considering dates and web addresses sufficient indicia of authenticity for admission of web printouts).  The page representing Defendant's amendment proposal appears to be an exact copy of a document filed by Defendant with the PTO, and bears the signature of one of Defendant's attorneys.  This is enough to support a finding that the documents are what Fattahi says they are.  Fed. R. Evid. 104(b).

Further, Exhibit 16 does not violate the best evidence rule.  First, there is no document that better represents what the "Organic Food Bar" main page shows.  That page is the PTO response to a search for the "Organic Food Bar" product and shows a summary of the product found.  Second, the document showing Defendant's proposed amendment to its identification of goods appears to be an exact duplicate of the original document.  The Court also finds it significant that the Defendant has raised no genuine question of its authenticity.  The duplicate is admissible.

Thus, Defendant has used the term "organic food bars" in a generic way.

### 3.3     Use of the Term by the Public

How the public uses the term is also instructive in whether a term is generic.  For example, in *Filipino Yellow Pages,* 198 F.3d at 1151, the court, in determining whether a term was generic, looked to the use of the term in a *Los Angeles Times* article.

Plaintiff relies on three articles, submitted as Exhibit 19 attached to the Fattahi Declaration, to show that the public uses "organic food bar" as a generic term.  In each of the articles, the term "organic food bar" is used in a generic way.  In the first article, a CEO of a food company is quoted as saying: "I had the idea to create and produce healthy, natural, organic food bars." (Fattahi Declaration, Exhibit 19.).  The second article discusses the organic products market, and includes a quote that manufacturers previously lacked the ingredients they "needed to make an organic food bar."  (*Id.*)  The third article is about new products, and notes that a company has created "an organic food bar with the antioxidant power of 12oz of broccoli."  (*Id.*)

Defendant raises evidentiary objections to Exhibit 19, arguing that each article "[l]acks foundation, [is] irrelevant, conclusory, hearsay, and double hearsay."  (Defendant Organic Food Bar, Inc.'s Evidentiary Objections to the Declaration Filed in Support of Plaintiff's Motion for Summary Judgment ("Evidentiary Objections") 8.)  Defendant is wrong.  The articles are neither irrelevant nor conclusory.  They show that the term "organic food bar" is used in articles that talk about health, fitness, and food.

Further, the articles do not lack foundation.  To give a document foundation, the proponent need only make a showing of authenticity sufficient to allow a reasonable juror to find

that the matter in question is what its proponent claims. *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) (citing Fed. R. Evid. 901(a)).  In the context of the internet, courts consider the distinctive characteristics of a website in making a finding of authenticity.  For instance, in *Perfect 10*, 213 F.Supp.2d at 1154, the court found that website printouts were sufficiently authenticated when the proponent declared that they were true and correct copies of pages on the internet and the printouts included on the bottom their web addresses and the dates printed.  The same situation exists here.  The Fattahi Declaration states that the printed articles are true and correct copies of articles found on a Lexis search for the terms "organic food bar" and "organic food bars."  (Fattahi Declaration, ¶ 22.)  The printouts include the web addresses and the dates printed.  The printouts, then, are sufficiently authenticated.

Finally, in this summary judgment motion, the articles are not hearsay, and the quotes in them are not double hearsay.  None of the statements in the articles are used to prove the truth of the matter asserted.  Fed. R. Evid. 801(c).  Plaintiff refers to the articles merely to show the use of the term "organic food bar" by the public.

Thus, Plaintiff has offered evidence to show that the public uses the term "organic food bar" in a generic way.


**3.4    Use of the Term by Other Companies Marketing a Similar Product**


Plaintiff argues that other companies market food bars with organic ingredients as "organic food bars."  To support this argument, Plaintiff submits the declaration of Jocelyn

Bates, the Sales Manager for North America for the "ReBar" brand of products of Noble Foods, Inc.. (Fattahi Declaration, Exhibit 11 ¶ 1.) In her declaration, Bates states that her company sells food bars made of organic ingredients. (*Id.* at ¶¶ 6, 8.) She states that Noble Foods, Inc. has used and continues to use and display on their packaging and marketing materials "certain terms to describe what our products are, including: 'Nutritious Organic Food Bar.'" (*Id.* at ¶ 8.) She declares that the term "Nutritious Organic Food Bar" is displayed on the product packaging and other marketing materials for "ReBar" products that are sold in the United States, and has been so displayed since she started with the company in 2000. (*Id.* at ¶ 9.)

Plaintiff also submits printouts from the VeganEssentials website, which lists products in the category of "Food Bars." (Fattahi Declaration, Exhibit 8, 9.) The printouts show the product names, brief descriptions, and customer reviews for two products: the "Omega Smart Organic Food Bar" and the "Alpsnack Organic Food Bar."

Defendant objects to these printouts from websites because each "lacks foundation, [is] irrelevant, [is] conclusory, violates the best evidence rule, [and is] hearsay." (Evidentiary Objections 3.) Defendant is wrong. The printouts are neither irrelevant nor conclusory. They show that the term "organic food bar" is used on websites that market food bars containing organic ingredients. Defendant does not specify how the printouts violate the best evidence rule. Further, the printouts do not lack foundation. The Fattahi Declaration states that the printouts are true and correct copies of websites, and the printouts include their web addresses and dates printed. Under the *Perfect 10* reasoning discussed earlier, the printouts are sufficiently authenticated.

Finally, the printouts are not hearsay because they are not offered to prove the truth of the matter asserted.  Fed. R. Evid. 801(c).  They are not offered to show whether the companies actually sell the bars advertised, or to show that exact ingredients in the bars.  Instead, they are offered to show that the term "organic food bar" appears on websites of this sort.  This is not hearsay.

Thus, Plaintiff has presented evidence of three companies using the term "organic food bar" while marketing food bars with organic ingredients.

### 3.5     The PTO's Consideration of the Term

Plaintiff has introduced evidence that the PTO has refused to register Defendant's trademark on the grounds that it is generic.  (Fattahi Declaration, Exhibit 16.)  In its Office Action dated October 18, 2006, the PTO stated that "organic food bar" "appears to be generic as applied to the goods."  (*Id.*)  This is strong evidence for the genericness of the mark, for "[w]hile the PTO's refusal to register a trademark term is not conclusive, it is entitled to 'great weight.'" *Suh*, 987 F.Supp. at 791 (quoting *Syntex Laboratories, Inc. V. Norwich Pharmacal Co.*, 437 F.2d 566, 569 (2d Cir. 1971); *cf. Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574 (9th Cir. 1992) (awarding a claim construction decision by the Patent Office an "especially weighty presumption of correctness" because of a principle of "administrative correctness").

Thus, the PTO refusal, thus far, to register Defendant's mark is further evidence that "organic food bar" is a generic term.

### 3.6    Conclusion

Plaintiff has presented a wealth of evidence indicating that "organic food bar" is a generic term.  Plaintiff has met its burden of demonstrating an absence of a genuine issue of material fact.  The burden, then, shifts to Defendant to produce competent evidence to create a genuine issue of material fact.

## 4.    DEFENDANT'S EVIDENCE THAT "ORGANIC FOOD BAR" IS NOT A GENERIC TERM

In contrast to Plaintiff, Defendant introduces very little evidence on the question of genericness.

First, Defendant introduces the deposition of Kerry Law, the Federal Rule of Civil Procedure 30(b)(6) witness for Plaintiff.  In that deposition, Law refers to the snack at issue interchangeably as "food bars" and "nutrition bars."  (Heyninck Declaration, Exhibit 5, pp. 109-110.)  Defendant argues that since "nutrition bar" can be a general term for the category of snack at issue, "food bar" cannot be.  (Opposition 11:11-28.)  Defendant seems to argue that there can be only one generic term for each type of product, and that any other name for that product must be descriptive.  Defendant is wrong.  For example, in *Surgicenters*, 601 F.2d 1011, the Ninth Circuit held that the term "Surgicenter" was generic.  Of course, "surgery center" is a more generic term with the same meaning.  *Id.* at 1013.  Still, the Ninth Circuit held that "Surgicenter"

1   was also generic.  Thus, even though "nutrition bars" may be a more generic term for the

2   category of snack at issue, "food bars" may also be a generic term.

3          Second, Defendant attempts to argue that the term "organic food bar" is not generic

4   because it has been used by the public to refer to a brand.  To support that argument, Defendant

5   introduces one product review of Organic Food Bar.  This evidence is irrelevant, as a product

6   review article will naturally use the name of the brand in a brand sense.  Defendant also

7   introduces materials advertising and selling Organic Food Bars as evidence that "organic food

8   bar" is not a generic term.  Defendant argues that if this Court would consider evidence of

9   Defendant's generic use of the term, it should also consider evidence of Defendant's nongeneric

10   use of the term.  This makes no sense.  In *Filipino Yellow Pages*, 198 F.3d at 1150-1151, the

11   Ninth Circuit noted that the plaintiff had used his company name "Filipino Yellow Pages" in a

12   generic sense when signing a contract agreeing not to compete in the "Filipino Yellow Pages"

13   market in California.  The Court considered that evidence that "Filipino Yellow Pages" was a

14   generic term.  The Court did not question that conclusion because the plaintiff also used the term

15   in a brand sense.  Thus, Defendant's use of its own name in a brand sense does not prove here

16   that "organic food bar" is not a generic term.

17          Defendant next argues that the fact that the PTO once determined that "organic food bar"

18   was descriptive creates a genuine issue of material fact.  But the PTO has changed that

19   determination, concluding that the term is generic.  (Fattiahi Declaration, Exhibit 16.)

20          Defendant further contends that the PTO has deemed the marks "Nourishing Food Bar"

21   and "Whole Foods Market" descriptive, and registered them.  (Opposition 18:9-24.)  Defendant

contends that these terms are similar to "organic food bar," and that "organic food bar" is thus also descriptive.  This evidence is weak in the face of an actual PTO determination about the term "organic food bar."

Finally, Defendant argues that "organic food bar" is not generic because Plaintiff "has not produced any dictionary definitions of the term Organic Food Bar."  (Opposition 18:27-28.)  This argument is baseless.  This Court is aware of no case that has based a finding of nongenericness on the fact that no dictionary definition of the whole mark exists.  To the contrary, in *Filipino Yellow Pages*, 198 F.3d at 1150-51, "Filipino Yellow Pages" was found to be a generic term, despite that fact that no dictionary definition of the whole mark existed.

**5.      CONSUMER SURVEY EVIDENCE**

Both parties have introduced survey evidence supporting their position, and each party correctly argues that the other party's survey is seriously flawed.

**5.1      Plaintiff's Survey**

Plaintiff has introduced evidence of a consumer survey conducted by Sandra R. Cogan, Ph.D.  Dr. Cogan's company, Cogan Research Group, specializes in designing and conducting market research surveys.  (Fattahi Declaration, Exhibit 22.)  For this case, Cogan Research Group conducted a survey entitled "Genericness and Secondary Meaning Survey Regarding the Name 'ORGANIC FOOD BAR'" ("Cogan Survey").  The survey design selected "is known as

the 'Teflon Survey' design which has been accepted and given weight by the courts and is frequently cited." (*Id.* at 11 (citing *E.I. duPont de Nemours & Co. v. Yoshida Int'l, Inc.*, 393 F.Supp. 502 (E.D.N.Y. 1975).)

During the survey, interviewers explained to 200 respondents what "common names" and "brand names" are. Interviewers then read a list of names for food and beverage products and asked whether respondents thought the name was for a common name, a brand name, both, neither, or if they didn't know. (Fattahi Declaration, Exhibit 22 p. 12.) The survey found that eighty-eight percent of respondents thought that "organic food bar" was a common name. It concluded: "An overwhelming majority of consumers in the relevant market think the name 'ORGANIC FOOD BAR' is a common/generic name." (*Id.* at 10.)

Defendant objects to the admissibility of the Cogan survey. Defendant argues that the survey is seriously flawed, and that any conclusions drawn from it would be "improper and irrelevant." (Evidentiary Objections 9-10.) For example, Defendant argues that the survey respondents were not the proper universe of respondents. Defendant argues that by interviewing people in shopping malls, not "specialized markets for nutrition products," the survey "completely neglected [Defendant's] primary customers." (Opposition 20:6-19.) Defendant states that "[t]his fundamental flaw renders the entire Cogan report irrelevant and improper." (*Id.*)

Defendant also argues that the Cogan Survey includes terms that improperly influenced the respondents. Defendant argues that the Cogan Survey pre-qualified repondents by asking them whether they had recently bought or intended to buy "nutrition bars, energy bars, or *food bars.*" (Supplemental Brief in Opposition to Plaintiff's Motion for Summary Judgment 4:21-

19

23.)  Defendant also points out that one of the names considered "common" in the survey was "organic tortilla chips."  (*Id.* at 5:5-7.)  Defendant contends that the use of these terms in a survey about "organic food bars" biased the survey.

Defendant's objections are well-taken, but they go to the weight of the survey evidence, not to the admissibility.  *See McNeilab, Inc. v. American Home Products Corp.*, 848 F.2d 34, 38 (2d Cir. 1988) (survey admissible despite disputes over methodology).  Thus, Plaintiff has introduced survey evidence to support its claim that "organic food bar" is a generic term.


### 5.2    Defendant's Survey


Three days before the hearing on this Motion, the Defendant also submitted survey evidence concerning whether "organic food bar" is a generic term.  Defendant's survey is entitled "Study to Determine Whether Consumers Perceive the Term "Organic Food Bar" to be a Generic Term" ("Poret Survey").  In that survey, designed by Hal L. Poret, consumers were shown a variety of nutrition bars and asked what they would ask for if they were looking for this product in a grocery store.  (Declaration of Hal. L. Poret in Support of Organic Food Bar, Inc.'s Opposition to Premier Nutrition, Inc.'s Motion for Summary Judgment, Exhibit A.)  The majority of consumers said "energy bar" or "protein bar."  Only three consumers out of 229 said "organic food bar."  Defendant introduces this to prove that "organic food bar" is not a generic term.

Defendant supports its survey model by mentioning that "[s]imilar open-ended questions were asked in the *DuPont* case."  This statement is misleading.  *E.I. duPont de Nemours & Co.*

*v. Yoshida International, Inc.*, 393 F.Supp. 502 (E.D.N.Y. 1975), is a case that Defendant itself has tried to distinguish because it deals with the question of whether a brand name has become generic, not with the question of whether a term is originally generic. (Supplemental Brief in Opposition to Plaintiff's Motion for Summary Judgment 2:6-10.)   In that case, both parties introduced survey evidence on whether "Teflon" had become a generic term.  Three of the surveys asked open-ended questions similar to the Poret Survey here.  The fourth, like the Cogan Survey here, explained the difference between a brand name and a common name and then asked whether each of eight names, including "Teflon" was a brand name or a common name. *DuPont*, 393 F.Supp. at 526.  The court discounted the three open-ended surveys, concluding that the fourth survey was "[t]he only survey which really gets down [the] critical element of the case."  *Id.* at 527.  Thus, Defendant's reliance on *DuPont* for its survey model is questionable.

Besides citing *Dupont*, Defendant's papers offer no case law in support of its open-ended survey questions.  And again, just because a term is not the most generic term for a product does not mean it is not generic.  This Court does not see how the Poret Survey supports, in any meaningful way, Defendant's argument that "organic food bar" is not generic.  *See Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.*, 684 F.2d 1316, 1323 (9th Cir. 1982) (finding that a survey was "no evidence" to support a finding of nongenericness, when the party introducing it had made no showing of its relevance to the case); *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 118 (2d Cir. 1984) (holding that a consumer confusion survey "is so badly flawed that it cannot be used to demonstrate the existence of a question of fact on the likelihood of consumer confusion").

Further, the universe of the Poret Survey, like that of the Cogan Survey, consisted of people in shopping malls.  Defendant itself has argued that that universe renders a survey on this topic "irrelevant and improper."  (Opposition 20:6-19.)  While a court should not weigh evidence on a summary judgment motion, *Liberty Lobby, Inc.*, 477 U.S. at 249-55, it is appropriate to note when a party argues that its own survey method is "fundamentally flawed."

Defendant has not produced competent evidence to create a genuine issue of material fact. It would be Defendant's burden at trial to prove nongenericness, and it is clear that Defendant would not be able to meet that burden.

**<u>CONCLUSION</u>**

Plaintiff's Motion is GRANTED.

DATED: March 27, 2008

_____
Andrew J. Guilford
United States District Judge